UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KANSAS BAYLY,<br><br>        Plaintiff,<br><br>v.<br><br>ILEARN PROPERTIES, LLC D/B/A ISG<br>PARTNERS and BENJAMIN HAWN,<br><br>        Defendants. | Civil Action No.: _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

COMES NOW plaintiff Kansas Bayly ("Plaintiff"), by and through the undersigned counsel, and files this *Verified Complaint for Damages* (the "Complaint") against defendants ILearn Properties, LLC d/b/a ISG Partners ("Defendant Company") and Benjamin Hawn ("Defendant Hawn") (collectively, Defendant Company and Defendant Hawn shall be referred to as "Defendants, respectfully showing the Court as follows:

## JURISDICTION AND VENUE

1.

This Court has jurisdiction over Plaintiff's claims under the Fair Labor

Standards Act pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §1331.

2.

This Court has supplemental jurisdiction over Plaintiff's claims that arise under the laws of the State of Georgia pursuant to 28 U.S.C. §1367(a), as these claims are so related to the claims upon which the Court's original jurisdiction is invoked that they form part of the same case or controversy under the U.S. Constitution.

3.

Defendant Company is a Georgia limited liability company and resides in this district. Defendant Company does business in and is engaged in commerce in the State of Georgia.

4.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims herein arose in this judicial district.

**THE PARTIES**

5.

Plaintiff is a resident of the State of Georgia.

6.

Plaintiff was considered an "employee" of Defendants, as that term has been defined by the FLSA, 29 U.S.C. §201 *et seq.*, 29 U.S.C. §203(e).

7.

Plaintiff was subject to and protected by the FLSA during her employment with Defendants because her work regularly involved commerce between Georgia and other states.

8.

Plaintiff was not paid minimum wage for all hours worked during her employment with Defendants, in violation of the FLSA.

9.

Plaintiff regularly worked an amount of time that was more than forty (40) hours per workweek during her employment with Defendants, but was not paid the overtime wage differential.

10.

Defendant Company is a for-profit limited liability company organized under the laws of the State of Georgia, and may be served through its registered agent, Benjamin Hawn, at its registered address of 3565 Piedmont Road N.E., Building 4, Suite 100, Atlanta, GA, 30305.

11.

This Court has personal jurisdiction over Defendant Company.

12.

At all times, relevant to this action, Defendant Company was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, because it had two or more employees engaged in commerce and because its annual gross sales volume exceeds $500,000.00.

13.

Defendant Hawn is an individual who resides in Georgia and may be served with process at his residence or wherever he may be found.

14.

This Court has personal jurisdiction over Defendant Hawn.

15.

Defendant Hawn was and is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d) inasmuch as he was acting directly or indirectly in the interest of Defendant Company in his interactions with Plaintiff, and he controlled the terms and conditions of Plaintiff's employment and compensation on a day-to-day basis.

16.

From on or about November 7, 2016 through on or about February 28, 2017,

Plaintiff was employed as an Associate Recruiter by Defendants and was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e) within three years preceding the filing hereof.

17.

Defendant Hawn is the Chief Executive Officer of Defendant Company and, upon information belief, is an owner of Defendant Company.

18.

At all times material hereto, Defendant Hawn was involved in the day-to-day operations of Defendant Company.

19.

Defendant Hawn exercised operational control over Defendant Company, including decisions regarding its lease, finances, taxes, payroll, and its compensation practices.

20.

Defendant Hawn had control over Defendant Company's payroll practices, including the terms and payment of Plaintiff's compensation.

21.

Defendant Hawn had control over Defendant Company's financial affairs, including paying its taxes and preparing its tax returns.

22.

At all material times hereto, Defendant Hawn regularly communicated with all employees of Defendant Company, including Plaintiff.

23.

At all material times hereto, Defendant Hawn had the authority to and did hire and fire employees of Defendant Company, including Plaintiff.

24.

At all times material hereto, Defendant Company vested Defendant Hawn with supervisory authority over Plaintiff and other employees.

25.

At all times material hereto, Defendant Hawn exercised supervisory authority over Plaintiff and her compensation during her employment with Defendants.

26.

Plaintiff performed non-exempt labor for Defendants within the last three (3) years

27.

Defendants are governed by and subject to FLSA §7, 29 U.S.C. §204 and §207.

## **FACTS**

28.

Defendant Company provides recruiting and staffing services to companies located throughout the nation.

29.

In October 2016, Defendant Hawn interviewed Plaintiff for a position of Associate Recruiter with Defendant Company.

30.

During this interview, Defendant Hawn represented to Plaintiff that recruiters earn approximately $100,000.00 per year in commissions.

31.

On or about October 28, 2016, Defendant Company, through Defendant Hawn, made Plaintiff an offer of employment for the position of Associate Recruiter (the "Employment Offer").

32.

The Employment Offer identified the Associate Recruiter position to be a full-time commissioned position, with the commissions based on candidates identified by Plaintiff being placed with Defendant Company's customers.

33.

The Employment Offer further provided that commissions would be paid on collection of funds from Defendant Company's customer.

34.

The Employment Offer also included a ramp-up bonus $6,000.00, to be paid in $2,000.00 increments every 30 days during the first 90 days of Plaintiff's employment (the "Ramp-Up Bonus").

35.

Under the terms of the Employment Offer, the Ramp-Up Bonus was only payable if Plaintiff achieved at least fifty percent (50%) of her target key performance indicators during each 30-day period.

36.

The Employment Offer further provided that the Ramp-Up Bonus, if earned, would be paid in addition to the commission.

37.

Plaintiff accepted Defendant Company's Employment Offer and began working for Defendants as an Associate Recruiter on or about November 7, 2016.

38.

During her employment with Defendants, Plaintiff regularly communicated

with Defendant Hawn about her work schedule, responsibilities, and compensation.

39.

Defendant Hawn supervised Plaintiff during all times of her employment with Defendants.

40.

Plaintiff reported to Defendant Hawn during her employment with Defendants.

41.

Defendant Hawn also had control over and established Plaintiff's amount and terms of compensation during her employment with Defendants.

42.

Defendant Hawn conducted regular meetings with Plaintiff and other employees of Defendant Company regarding the status of requested and placed candidates.

43.

As an Associate Recruiter, Plaintiff searched for potential job candidates throughout the United States based on the specific qualifications and criteria provided by the customers of Defendant Company.

44.

Plaintiff contacted those prospective candidates located throughout the United States who generally met the customer's job requirements and spoke with them about the position available with one or more of Defendant Company's customers.

45.

Plaintiff identified four (4) prospective candidates who were successfully placed with Defendant Company's customers during her employment with Defendants (the "Candidates").

46.

On January 11, 2017, Defendant Hawn acknowledged, on behalf of Defendants, that Defendants had already billed to Defendant Company's customers three (3) of the Candidates identified by Plaintiff and placed with Defendant Company's customers.

47.

Plaintiff met with Defendant Hawn on February 28, 2017 to discuss her employment, commission payments, and potential resignation.

48.

During this meeting, Plaintiff explained the current status of her Candidates, and Defendant Hawn responded by stating that those are a lot of commissions.

49.

During this meeting, Defendant Hawn represented, on behalf of both Defendants, that he would speak with Defendant Company's account managers to determine the amount of Plaintiff's commissions payable at that time and the amount of Plaintiff's commissions payable at the end of ninety (90) days from the Candidates' placement.

50.

Relying on Defendant Hawn's representation, Plaintiff resigned from Defendants' employment that same day, on February 28, 2017.

51.

Upon information and belief, when he returned to Defendant Company's office after his meeting with Plaintiff, Defendant Hawn stated to another employee of Defendant Company that Plaintiff was "dumb" to have left Defendant Company's employment, and that Defendant Hawn planned to use the commission payments owed to Plaintiff to go on vacation.

52.

During her entire employment with Defendants, Plaintiff worked forty (40) hours each week in Defendant Company's office, located at 3565 Piedmont Road N.E., Suite 100, Atlanta, GA 30305.

53.

During her entire employment with Defendants, Plaintiff worked an additional five (5) to ten (10) hours of overtime each week outside of Defendant Company's office.

54.

The only compensation Plaintiff received during her employment with Defendants were the payments of the Ramp-Up Bonus.

55.

Defendants did not remit any payments of commissions to Plaintiff during her employment, including, without limitation, payments for the Candidates.

56.

Defendants have not remitted any payments of commissions to Plaintiff as of the date of this Complaint, including, without limitation, payments for the Candidates.

57.

Plaintiff did not receive any compensation, including minimum wage, for the hours she worked in February 2017.

58.

Plaintiff also did not receive compensation for the overtime she worked

during her entire employment with Defendants.

59.

Upon information and belief, Defendant Company received a fee in the amount of twenty-five percent (25%) of the starting salary for each of Plaintiff's Candidates.

## COUNT I
## Failure to Pay Minimum Wage Pursuant to 29 U.S.C. §206
### (All Defendants)

60.

Plaintiff incorporates and re-alleges Paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61.

Based on Defendants' conduct, as described above, Defendants failed to pay Plaintiff the federal minimum wage for all hours worked.

62.

Defendants' actions were willful, within the meaning of 29 U.S.C. §255(a) and were committed with a conscious disregard for the rights of Plaintiff.

63.

Because of Defendants' actions and violations of the FLSA, Plaintiff is entitled to recover her unpaid minimum wage compensation plus liquidated

damages, prejudgment interest, reasonable attorneys' fees and costs, pursuant to 29

U.S.C. §216(b) with all amounts to be determined at trial.

## COUNT II
## Failure to Pay Overtime Pursuant to 29 U.S.C. §207
### (All Defendants)

64.

Plaintiff incorporates and re-alleges Paragraphs 1 through 63 of this

Complaint as if fully set forth herein.

65.

Defendants have violated the FLSA, 29 U.S.C. §201, *et seq.,* including but

not limited to 29 U.S.C. §207, by failing to pay overtime wages for hours Plaintiff

worked more than 40 hours in given workweeks without compensation.

66.

The FLSA, 29 U.S.C. §207, requires employers to pay employees one and

one-half times the regular rate of pay for all hours worked more than 40 hours in a

workweek.

67.

Defendants suffered and permitted Plaintiff to routinely work more than 40

hours per week without overtime compensation.

68.

Defendants' actions, policies and/or practices as described above violate the FLSA's overtime requirement by regularly and repeatedly failing to compensate Plaintiff at the required overtime rate.

69.

Defendants knew, or showed reckless disregard, for the fact that they failed to pay Plaintiff overtime compensation in violation of the FLSA.

70.

Defendants failed to accurately report, record and/or preserve records of hours worked by Plaintiff, and thus has failed to make, keep and preserve records with respect to each of their employees sufficient to determine their wages, hours and other conditions and practices of employment, in violation of the FLSA.

71.

Plaintiff was subject to the same unlawful policies of Defendants, i.e. Defendants' failure to pay Plaintiff for her hours worked over 40 in workweeks.

72.

Defendants' violations of the FLSA were willful and in bad faith.

73.

Pursuant to the FLSA, 29 U.S.C. §216, Plaintiff is entitled to recover the

unpaid overtime wage differential, liquidated damages in an equal amount to unpaid overtime, attorneys' fees, and the costs of this litigation incurred in connection with these claims.

## COUNT III
### Fraud
### (All Defendants)

74.

Plaintiff incorporates and re-alleges Paragraphs 1 through 74 of this Complaint as if fully set forth herein.

75.

In February 2017, Defendant Hawn, personally and on behalf of Defendant Company, represented to Plaintiff that he would confirm with Defendant Company's account managers to determine when payment for Plaintiff's earned commissions would be remitted to her.

76.

At the time Defendants made the False Representations to Plaintiff, they had no intention of paying to Plaintiff any amount of her earned commissions.

77.

Defendants made the False Representations with knowledge of their falsity and/or a reckless disregard for their truth or falsity.

78.

Defendants made the False Representations with the intent that Plaintiff act upon them.

79.

Plaintiff reasonably relied on Defendants' False Representations, was unaware the representations were false, had a right to rely on them, and did rely on them by resigning from employment with Defendants.

80.

Plaintiff has been harmed by her reasonable reliance upon the False Representations.

81.

Defendants' actions in the commission of the intentional tort of fraud constituted willful misconduct so as to authorize an award of punitive damages in order to deter such willful misconduct.

82.

Defendants have acted in bad faith, have been stubbornly litigious, and have Plaintiff unnecessary trouble and expense so as to allow it to recover reasonable expenses and attorney's fees pursuant to O.C.G.A. §13-6-11.

## COUNT IV
## Negligent Misrepresentation
### (All Defendants)

83.

Plaintiff incorporates and re-alleges Paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84.

In February 2017, Defendant Hawn, personally and on behalf of Defendant Company, represented to Plaintiff that he would confirm with Defendant Company's accounts manager to determine when payment for Plaintiff's earned Commissions would be remitted to her (the "False Representations").

85.

Defendants negligently and falsely communicated the False Representations to Plaintiff.

86.

Plaintiff reasonably relied on Defendants' False Representations, was unaware the representations were false, had a right to rely on them, and did rely on them by resigning from employment with Defendants.

87.

Plaintiff has been harmed by her reasonable reliance upon the False Representations.

88.

Defendants have acted in bad faith, have been stubbornly litigious, and have Plaintiff unnecessary trouble and expense so as to allow it to recover reasonable expenses and attorney's fees pursuant to O.C.G.A. §13-6-11.

## COUNT V
### Breach of Contract
### (Defendant Company)

89.

Plaintiff incorporates and re-alleges Paragraphs 1 through 88 of this Complaint as if fully set forth herein.

90.

The agreement between Plaintiff and Defendant Company, that Plaintiff would work for Defendant Company in exchange for payment of commissions for candidates placed with Defendant Company's customers, constituted a legally binding contract.

91.

Defendant Company breached the agreement by failing to pay Plaintiff her earned commissions in exchange for the candidates she placed with customers of Defendant Company during her employment.

92.

As the direct and foreseeable result of this breach, Plaintiff has been harmed in the amount of approximately $12,812.50, plus interest thereon.

93.

Defendant Company intentionally and willfully breached its agreement with Plaintiff and has refused to honor its obligations.

94.

Defendant Company has also been stubbornly litigious and has caused Plaintiff unnecessary trouble and expense in connection with this matter.

95.

Because of Defendant Company's bad faith, Plaintiff is entitled to receive her reasonable attorney's fees and costs of litigation pursuant to O.C.G.A. §13-6-11.

## **COUNT VI**
## **Quantum Meruit**
### **(Defendant Company)**

96.

Plaintiff incorporates and re-alleges Paragraphs 1 through 95 of this Complaint as if fully set forth herein.

97.

Plaintiff's performance of work for Defendant Company was valuable to

Defendant Company.

98.

Plaintiff's performance of work for Defendant Company was at the request of Defendant Company and knowingly accepted by Defendant Company.

99.

Plaintiff performed work for Defendant Company with the expectation of compensation at the agreed-upon commission rate and terms of Defendant Company's employment offer.

100.

It would be unjust not to require Defendant Company to compensate Plaintiff.

101.

Plaintiff is entitled to receive an amount equal to the value she conferred to Defendant Company in an amount to be determined at trial.

102.

Defendant Company intentionally and willfully refused to pay Plaintiff for the work she

103.

Defendant Company has also been stubbornly litigious and has caused Plaintiff unnecessary trouble and expense in connection with this matter.

104.

Because of Defendant Company's bad faith, Plaintiff is entitled to receive her reasonable attorney's fees and costs of litigation pursuant to O.C.G.A. §13-6-11.

## COUNT VII
## Unjust Enrichment
### (Defendant Company)

105.

Plaintiff incorporates and re-alleges Paragraphs 1 through 104 of this Complaint as if fully set forth herein.

106.

Defendant Company has been unjustly enriched by receiving, at its request, the benefit of Plaintiff's services at a rate of total compensation below that which she would have worked and agreed to work, and which is less than the market rate for an employee with Plaintiff's level of experience and skill.

107.

Plaintiff reasonably expected to be compensated for the work she performed for Defendant Company.

108.

Equity demands that Defendant Company be required to compensate Plaintiff for the work she performed for Defendant Company at an amount to be determined

at trial.

109.

Defendant Company intentionally and willfully breached its agreement with Plaintiff and has refused to honor its obligations.

110.

Defendant Company has also been stubbornly litigious and has caused Plaintiff unnecessary trouble and expense in connection with this matter.

111.

Because of Defendant Company's bad faith, Plaintiff is entitled to receive her reasonable attorney's fees and costs of litigation pursuant to O.C.G.A. §13-6-11.

WHEREFORE, Plaintiff Kansas Bayly respectfully prays the Court:

(a) Take jurisdiction of this matter;

(b) Issue an Order holding each of the Defendants to be "employers" as that term is defined under the FLSA;

(c) Grant a trial by jury as to all matters properly triable to a jury;

(d) Issue a judgment declaring that Plaintiff is an employee covered by the FLSA and that Defendants have failed to comply with the requirements of the FLSA;

(e) Award Plaintiff all due but unpaid minimum wages and liquidated damages equaling 100% of the minimum wages due Plaintiff, as required by the

FLSA;

(f) Award Plaintiff payment for each overtime hour worked during the relevant time period, calculated at one-and-one-half times her regular rate, and liquidated damages equaling 100% of the overtime wages due Plaintiff, as required by the FLSA;

(g) Award Plaintiff prejudgment interest on all amounts owed to the extent that liquidated damages are not awarded;

(h) Award Plaintiff nominal damages;

(i) Award Plaintiff her reasonable attorney's fees and costs of litigation on Counts I and II pursuant to 29 U.S.C. § 216(b);

(j) Award Plaintiff judgment against Defendant Company as to her contract, quantum meruit, and unjust enrichment claims in an amount to be proved at trial;

(k) Award Plaintiff judgment against Defendants for punitive damages in an amount to be determined by the enlightened conscience of an impartial jury;

(l) Award Plaintiff her reasonable attorney's fees and costs of litigation pursuant to O.C.G.A. § 13-6-11;

(m) Enter judgment for Plaintiff in an amount reflecting the award of all damages and relief requested in this Complaint; and

(n) Award any and such other further relief this Court deems just, equitable

and proper.

Respectfully submitted this sixth (6th) day of November, 2018.

MORGAN EASLEY, LLC


By: *s/Erin A. Easley*
Erin A. Easley, Esq.
GA Bar No. 897138
Peter E. Morgan, Esq.
GA Bar No. 203055

555 Sun Valley Drive, Suite J4
Roswell, GA 30076
Tel.: (770) 383-4660
Fax: (770) 383-4661
ee@morganeasley.com
pm@morganeasley.com